## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEPHEN PROCTOR, *et al.*,  )
)
              Plaintiffs,  )
)
vs.  )    Case No. CIV-07-654-M
)
BOARD OF COUNTY COMMISSIONERS  )
OF THE COUNTY OF POTTAWATOMIE,  )
*et al.*,  )
)
              Defendants.  )

---

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,
## BOARD OF COUNTY COMMISSIONERS OF THE
## COUNTY OF POTTAWATOMIE, AND BRIEF IN SUPPORT

---

Chris J. Collins, OBA No. 1800
John L. Blodgett, OBA No. 18343
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
Facsimile:   (405) 524-2078
Email:     cjc@czwglaw.com
            john@czwglaw.com

March 2, 2009         Attorneys for Defendant, Board of County
Commissioners of the County of
Pottawatomie

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MATERIAL FACTS AS TO WHICH NO SUBSTANTIAL
 CONTROVERSY EXISTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PROPOSITION I:   THE BOARD IS ENTITLED TO
         SUMMARY JUDGMENT REGARDING
         PLAINTIFFS' CONSTITUTIONAL
         CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PROPOSITION II:   PLAINTIFFS CANNOT MAINTAIN A
         CLAIM FOR PUNITIVE DAMAGES
         AGAINST THE BOARD . . . . . . . . . . . . . . . . . . . . . . 15

PROPOSITION III:  PLAINTIFFS' CLAIMS ARE TIME-
         BARRED PURSUANT TO THE
         STATUTE OF LIMITATIONS SET
         FORTH IN OKLA. STAT. TIT. 12,
         § 95(11) AND MUST BE DISMISSED . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) . . . . . . . . . . . . . 11

*Allen v. Pittsburg*, 1911 OK 130, 116 P. 175 . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bd. of County Comm'rs of Bryant County v. Brown*, 520 U.S. 397,
117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548,
91 L. Ed. 2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748,
69 L. Ed. 2d 616 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Clark v. City of Draper,* 168 F. 3d 1185 (10th Cir. 1999) . . . . . . . . . . . . . . . . 12

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 11

*Cone v. Longmont United Hosp. Ass'n*,
14 F.3d 526 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 11

*Jantzen v. Hawkins*, 188 F.3d 1247 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . 12

*Lairmore v. Bd. of Comm'rs of Okmulgee County*,
1948 OK 163, 195 P.2d 762 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Malek v. Haun*, 26 F.3d 1013 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 4

*McKee v. Heggy*, 703 F.2d 479 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 15

*Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658,
98 S. Ct. 2018, 56 L. Ed. 2d 611(1978) . . . . . . . . . . . . . . . . . . 11, 12, 15

**STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 15

Okla. Stat. tit. 12, § 95(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Okla. Stat. tit. 19, § 339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Okla. Stat. tit. 60, § 176 to 180.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

**RULES**

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF POTTAWATOMIE, AND BRIEF IN SUPPORT

Defendant, Board of County Commissioners of the County of Pottawatomie ("Board"), moves for an Order pursuant to Rule 56(c) of the Federal Rules of Civil Procedure granting summary judgment in its favor.

## STATEMENT OF THE CASE

Pottawatomie County, like many counties in Oklahoma and throughout the United States, was plagued with problems concerning its antiquated jail. Many of the jails in Oklahoma were constructed decades ago and were usually located in the county courthouses. This was also true of the Pottawatomie County Jail, which was located in the Pottawatomie County Courthouse.

In late 1999, the Oklahoma Jail Inspector issued a deadline to the Board that it had to have an action plan to repair problems in the County Jail. The County Jail's problems included plumbing, mold, sanitary issues, over crowded living conditions for inmates and numerous other problems, which resulted in the facility's failure to meet the Oklahoma Minimum Jail Standards in numerous ways.

The Board had previously tried to deal with the County Jail problems by proposing a sales tax. However, the sales tax was defeated in August of 1995. Again, in July of 2000, the Board attempted to obtain additional funding for the County Jail by a proposed sales tax, which was again defeated. In the summer of

2001, a Pottawatomie County Jail Advisory Committee was established to research the County's jail dilemma, and proposed changes.

In February of 2002, the Board unanimously approved a Trust Indenture creating the Pottawatomie County Public Safety Center Trust ("Trust"). The Trust was set up pursuant to the provisions of Title 60 of the Oklahoma statutes. This creation of the Trust resulted in a significant change in the manner in which the Pottawatomie County Jail was operated. Before the Trust, the County Jail was a traditional County Jail, being operated by the County Sheriff, pursuant to the provisions of Title 19 of the Oklahoma statutes. With the establishment of the Trust and as of October 15, 2002, the Sheriff no longer had any direct involvement with the operation of the jail. Instead, Rodney Bottoms was hired as the Executive Director for the Trust and was responsible for the operation of the Pottawatomie County Public Safety Center ("PCPSC").

By March of 2002, the Trust was studying the cost associated with building a new correctional facility. It was decided that a County sales tax would be needed to fund such a facility. Meanwhile, Don Garrison, the State Jail Inspector, gave the Board a May 1, 2002 deadline to move prisoners to the Shawnee City Jail, or begin renovations at the old County Jail facility.

By April 2002, Executive Director Rodney Bottoms proposed to the Trust that a new correctional facility be constructed. That same month, the Pottawatomie

County Sales Tax Committee endorsed a sales tax for the purpose of funding a new correctional facility.  In June of 2002, the Pottawatomie County voters passed a sales tax, which provided the funding for a new detention facility.  On October 15, 2002, pursuant to an Operational Agreement between the Trust and the Pottawatomie County Sheriff, the Trust became responsible for the management of the Pottawatomie County Jail.  In late 2002, the Trust approved an agreement with the City of Shawnee to lease the Shawnee Municipal Jail to assist in the overcrowding situation that was occurring at the County Jail.  In January of 2003, the old Shawnee municipal jail was reopened to function as a booking and holding facility in conjunction with the old County Jail facility.  In December 2003, ground was broken for the new detention facility, and on April 19, 2005 the PCPSC was approved for occupancy by the Oklahoma Jail Inspector.

All of the Plaintiffs are former inmates of the PCPSC.  Plaintiffs' filed suit on May 17, 2007 in the District Court of Pottawatomie County, Oklahoma alleging tortious acts purportedly occurred at the PCPSC in violation of their constitutional rights.  Specifically, Plaintiffs' alleged PCPSC detention officers abused the use of restraints, restraint chairs, and tasers.  On May 23, 2007, Plaintiffs' filed an Amended Petition in the District Court of Pottawatomie County, Oklahoma,[1] alleging

---

[1]On June 7, 2007, this matter was removed from the District Court of Pottawatomie County to the United States District Court for the Western District of Oklahoma [Dkt. #1].  Thus, Plaintiffs' initial pleadings were entitled "Petition," and

3

the same acts asserted in their initial Petition violated their rights under the United States Constitution.[2]  Plaintiffs did not assert a state tort cause of action in their Complaint.

Plaintiffs, Stephen Proctor, Robert Almon, Travis Foote, Matthew Laney and Tecumseh Martinez allege that on separate occasions during a time period of June 1, 2005 to July 10, 2005, while inmates of the PCPSC, they were each placed into restraint chairs without benefit of a hearing, medical supervision, routine bathroom breaks, and normal food and utensils, all of which they claim were in violation of their Fourth, Eighth, and Fourteenth amendment rights under the United States Constitution.  Plaintiffs, Matthew Laney, Tecumseh Martinez, Lloyd Conover and Kenneth Reinhart allege that on separate occasions during a time period of June 1, 2005 to June 24, 2005, while inmates of the PCPSC, they were each chained to their beds in violation of their First, Fourth, Eighth and Fourteenth amendment rights

---

"Amended Petition."  In deference to the federal forum, Defendant will refer to the Petition and Amended Petition as one document, Plaintiffs' "Complaint."

[2]Plaintiffs referenced the Oklahoma Constitution in their Amended Petition. If Plaintiffs are attempting to assert a claim based on the Oklahoma Constitution, such a claim is superfluous.  As a general rule, constitutional protections encompassed in Oklahoma's Constitution are coextensive with those of its federal counterpart. *Presley v. Bd. of County Comm'rs of Oklahoma County*, 1999 OK 45, 981 P.2d 309, 312. If Plaintiffs are attempting to assert a 42 U.S.C. § 1983 claim based on an alleged violation of the Oklahoma Constitution, the claim is insufficient to support a § 1983 cause of action. *See, Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (the violation of a state's constitution does not support liability under 42 U.S.C. § 1983).

under the United States Constitution.  Plaintiff, Bobby Ashley alleges that on or about May 19, 2005, while an inmate of the PCPSC, he was tasered in violation of his Fourth, Eighth and Fourteenth amendment rights under the United States Constitution.[3]

Plaintiffs allege a pattern of abuse reflecting a policy which is in contravention of existing law and the Constitution of the United States, and that the Board and the Trust have ignored or failed to supervise the management of the PCPSC.  Plaintiffs' claim these acts involved an extreme degree of risk to them and show deliberate indifference to existing law and their constitutional rights entitling them to exemplary damages.  Plaintiffs have not sued the individual jailer(s) who allegedly committed the unconstitutional acts.[4]

**MATERIAL FACTS AS TO WHICH NO
SUBSTANTIAL CONTROVERSY EXISTS**

1.      The Trust was created on February 4, 2002 pursuant to the provisions of Title 60 of the Oklahoma Statutes. [*See,* Affidavit of Commissioner Buck Day, ¶ 3, attached hereto as Ex. 1, and the Pottawatomie County Public Safety Center Trust

---

[3] Plaintiff Amanda Ellette was among those Plaintiffs who filed the Complaint. A Joint Stipulation of Dismissal Without Prejudice [Dkt. # 28] as to Amanda Ellette was filed on February 23, 2009.

[4] Plaintiffs' Complaint named Rod Bottoms, individually as the Director of the PCPSC as a defendant.  Defendants' filed a Suggestion of Death Upon the Record [Dkt. #24] on October 23, 2008 and through its Order [Dkt. #27] of January 29, 2009, the Court dismissed Plaintiffs' claims against Rod Bottoms.  No other individual has been named as a defendant.

Indenture, attached thereto as Ex. A.]  The Trust was created pursuant to the provisions of Okla. Stat. tit. 60, § 176 to 180.4, in part, for the purposes of promoting, administering, developing, owning, leasing, and financing projects or facilities relating to corrections facilities, jails, or other facilities relating to the administration of justice.  [Ex. 1, Day Aff., ¶ 3, and Trust Indenture, Ex. A thereto.]

2.      The Trust was created on February 4, 2002 by the Board pursuant to a Trust Indenture.  [Ex. 1, Day Aff., ¶ 3, and Trust Indenture, Ex. A thereto.]

3.      On February 4, 2002, the Commissioners of the Board of County Commissioners of Pottawatomie County were Harvey "Buck" Day, Bob Guinn and Jerry Richards.  [Ex. 1, Day Aff., ¶ 4.]

4.      On February 4, 2002, the Trustees of the Trust were Clayton Eads, Randy Gilbert, Carolyn Bassett, John W. Goodson and Larry E. Briggs.  [Ex. 1, Day Aff., ¶ 5, and Trust Indenture, Ex. A thereto.]

5.      At all times relevant to the incidents described in Plaintiffs' Complaint, the Trustees of the Trust were Clayton Eads, Randy Gilbert, Carolyn Bassett, John W. Goodson and Larry E. Briggs.  [Ex. 1, Day Aff., ¶ 6.]

6.      At no time subsequent to the creation of the Trust on February 4, 2002 have any Commissioners of the Board served as Trustees of the Trust. [Ex. 1, Day Aff., ¶ 7.]

6

7.      On October 15, 2002, a Detention Services Operational Agreement ("Operational Agreement") was entered into between the Board, the Pottawatomie County Sheriff, and the Trust.  This Operational Agreement established that, effective October 15, 2002, the Trust would be responsible for the management of the Pottawatomie County Jail, to include all functions and services required to incarcerate prisoners in the County Jail, including, but not limited to, booking, feeding, supplying of medical care, appearances in court, and release or transportation as required by the circumstances for each prisoner. The Pottawatomie County Sheriff was released from any obligation to run the County Jail operations. Subsequent to the Operational Agreement, the Sheriff no longer had any direct involvement with the operation of the County Jail.  [Ex. 1, Day Aff., ¶ 9, and Operational Agreement, attached thereto as Ex. B.]

8.      At all times relevant to the allegations contained Plaintiffs' Complaint, the Trust was responsible for the management of the PCPSC, pursuant to the same terms described in the October 15, 2002 Operational Agreement.  [Ex. 1, Day Aff., ¶ 10.]

9.      The PCPSC is a detention facility operated, staffed and maintained by the Trust.  [Ex. 1, Day Aff., ¶ 11.]

10.      The Board is not responsible for making or implementing policy for the PCPSC or the Trust.  [Ex. 1, Day Aff., ¶ 12.]

7

11.     The Board is not involved in the day-to-day operation of the PCPSC or the Trust.  [Ex. 1, Day Aff., ¶ 13.]

12.     The Board does not have any involvement in decisions or matters regarding the policy of the PCPSC or the Trust.  [Ex. 1, Day Aff., ¶ 14.]

13.     The Board does not have or exercise any control over the PCPSC or the Trust.  [Ex. 1, Day Aff., ¶ 15.]

14.     The Board was not involved in the incidents at issue in the instant action, or in any related event.  [Ex. 1, Day Aff., ¶ 16.]

15.     Plaintiff Stephen Proctor is not aware of any policies adopted by the Board regarding the use of restraint chairs or restraint devices. [*See*, Steve Proctor Dep., 199:10-200:4, attached hereto as Ex. 2.]

16.     Plaintiff Bobby Ashley is not aware of any policies, customs, practices, legislation or official business of the Board that deal with the use of tasers in the PCPSC. [*See*, Bobby Ashley Dep., 117:5-19, 118:23-119:22, attached hereto as Ex. 3.]

17.     Plaintiff Robert Almon has no knowledge of any policies of the Board regarding the use of restraint chairs in the PCPSC.  [*See*, Robert Almon Dep., 110:12-112:10, attached hereto as Ex. 4.]

18.     Plaintiff Tecumseh Martinez has no knowledge of any policies, practices, customs, official decisions, or legislative actions of the Board which

8

approved, endorsed, or recommended the use of restraint chairs in the PCPSC. [*See*, Tecumseh Martinez Dep., 156:13-157:7, attached hereto as Ex. 5.]

19.    Plaintiff Lloyd Conover has no knowledge of any policies, practices or customs of the Board regarding the chaining of inmates to their bunks.  [*See*, Lloyd Conover Dep., 125:2-25, attached hereto as Ex. 6.]

20.    Plaintiff Kenneth Reinhart has no knowledge that the Board implemented policies instructing the PCPSC to restrain inmates in restraint chairs or to chain inmates to their bunks, and has no knowledge of any legislative acts of the Board approving the use of restraint chairs or chaining inmates to their bunks. [*See*, Kenneth Reinhart Dep., 155:2-156:5, attached hereto as Ex. 7.]

21.    Plaintiff Travis Foote has no knowledge of any policies of the Board concerning the use of restraint chairs.  [*See*, Travis Foote Dep., 169:9-24, attached hereto as Ex. 8.]

22.     Plaintiff Matthew Laney has no knowledge of any policies of the Board regarding restraint chairs, and further has no knowledge that the Board had anything to do with the day-to-day operation of the PCPSC.  [*See*, Matthew Laney Dep., 74:11-25, attached hereto as Ex. 9.]

## ARGUMENT AND AUTHORITIES

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the Supreme Court held, regarding motions for summary judgment, that, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. In addition, the *Anderson* court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. A movant's summary judgment burden may properly be met by reference to the lack of evidence

in support of the plaintiff's position.  *See, Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (*citing Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526 (10th Cir. 1994), "[e]ven though all doubts must be resolved in [the nonmovant's] favor, allegations alone will not defeat summary judgment." *Cone* at 530 (*citing Celotex*, 477 U.S. at 324); *see also, Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  Moreover, "[i]n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## PROPOSITION I: THE BOARD IS ENTITLED TO SUMMARY JUDGMENT REGARDING PLAINTIFFS' CONSTITUTIONAL CLAIMS.

Plaintiffs allege the Defendants violated their constitutional rights during events allegedly occurring from May 19, 2005 to July 10, 2005, as outlined in their Complaint.

Liability under 42 U.S.C. § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability.  *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611(1978).  In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused *by that entity's own policies and customs. Id*. at 694-95 (emphasis added).  The actions of a

governmental entity must be the moving force behind the constitutional violation. *Monell* at 694.  A municipality may not be held liable simply because it "employs a tortfeasor." *Bd. of County Comm'rs of Bryant County v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (*citing Monell*).  Additionally, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Id.* at 406-07.

Likewise, in *Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999), this Court specifically held a board of county commissioners may not be held liable for violating § 1983 due to actions of an employee of a county department absent a showing that the employee in question was executing an unconstitutional policy or custom of the board itself. *Jantzen*, at 1259, *citing Monell*, 436 U.S. at 694; *Clark v. City of Draper*, 168 F. 3d 1185, 1187 n.5 (10th Cir. 1999).  Not only must Plaintiffs establish that an unconstitutional policy or custom of the Board existed, but in accordance with *Monell*, they must also establish that this policy or custom *caused* the unconstitutional deprivations alleged.  *Monell,* 436 U.S. at 694.

Plaintiffs have presented no evidence to support their hyperbolic allegations because no evidence exists of any policy or custom of the Board which caused or contributed to Plaintiffs' alleged constitutional violations.  The general powers of the Board are set forth in Okla. Stat. tit. 19, § 339.  The limits of these powers are strictly

construed.  *Allen v. Pittsburg*, 1911 OK 130, 116 P. 175.  The Board may not

exercise any authority not expressly granted in the statutes or arising by necessary

implication from the statutory powers.  *Lairmore v. Bd. of Comm'rs of Okmulgee*

*County*, 1948 OK 163, 195 P.2d 762, 764.

The Trust was created on February 4, 2002 pursuant to the provisions of Title

60 of the Oklahoma Statutes.  [Uncontroverted Fact No. 1.]  Okla. Stat. tit. 60,

§ 176.1, states, in pertinent part, that a public trust:

> A.    [A] public trust duly created in accordance with
> . . . this title shall be presumed for all purposes of
> Oklahoma law to:
> * * * *
> > 2.    Exist as a legal entity separate and
> > distinct from the settlor and from the governmental
> > entity that is its beneficiary; and
> > * * * *
> D.    [T]he affairs of the public trust shall be separate and
> independent from the affairs of the beneficiary in all
> matters or activities authorized by the written instrument
> creating such public trust including, but not limited to, the
> public trust's budget, expenditures, revenues and general
> operation and management of its facilities or
> functions . . . .

Thus, under the provisions of Okla. Stat. tit. 60, the Board did not and does not have

the authority to control decisions relating to the Trust's policies.  The Trust is

governed by five Trustees.  At the time of the Trust's creation, and at all times

relevant to the allegations contained in Plaintiffs' Complaint, the individual Trustees

of the Trust were Clayton Eads, Randy Gilbert, Carolyn Bassett, John W. Goodson

and Larry E. Briggs.  [Uncontroverted Fact Nos. 4 & 5.]  At the time the Trust was created, the Commissioners of the Board were Harvey "Buck" Day, Bob Guinn and Jerry Richards.  [Uncontroverted Fact No. 3.]  At no time subsequent to the creation of the Trust on February 4, 2002 have any Commissioners of the Board served as Trustees of the Trust.   [Uncontroverted Fact No. 6.]   Furthermore, at all times relevant to the allegations contained in Plaintiffs' Complaint, the Trust was responsible for the management of the PCPSC, pursuant to the Operational Agreement.  [Uncontroverted Fact No. 8.]  Assuming, arguendo, Plaintiffs could prove the alleged violations were caused by an identifiable unconstitutional policy, such policy is not a policy of the Board.

Even taking Plaintiffs' allegations as true, Plaintiffs could not support a cause of action against the Board.  Plaintiffs' claims are based on events which allegedly occurred at the PCPSC.  The PCPSC is a detention facility operated, staffed and maintained by the Trust.  [Uncontroverted Fact No. 9.]  The Board is not responsible for making and implementing policy for the PCPSC or the Trust, or in decisions or matters regarding the Trust's policies.  [Uncontroverted Fact Nos. 10 & 12.]  The Board is not involved in the day-to-day operation of the PCPSC.  [Uncontroverted Fact No. 11.]  The Board does not control the PCPSC Trust.  [Uncontroverted Fact No. 13.]  The Board was not involved in the alleged incidents at issue in Plaintiffs' Complaint, or in any related event.  [Uncontroverted Fact No. 14.]

14

Plaintiffs have not and cannot present any evidence that the Board was involved in the alleged events which are the subject of this lawsuit or that the Board's policies were involved in the alleged events which led to this lawsuit. The Plaintiffs have no knowledge of any policies of the Board regarding restraint chairs, chaining inmates to their bunks, or the use of tasers in the PCPSC. [Uncontroverted Fact Nos. 15 - 22.] However, in order to find the Board liable under § 1983, *Monell* requires Plaintiffs to establish that the Board *itself* caused the alleged constitutional violations. Plaintiffs cannot present any evidence and, in fact, have no evidence that a policy of the Board was even implicated during the alleged events underlying this case. As such, the Board is entitled to summary judgment as a matter of law regarding Plaintiffs' constitutional claims.

**PROPOSITION II: PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR PUNITIVE DAMAGES AGAINST THE BOARD.**

Plaintiffs' Complaint asserts claims for exemplary or punitive damages. However, Plaintiffs cannot maintain such a claim against the Board. The United States Supreme Court has unequivocally stated that a municipality or political subdivision is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *see also, McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

**PROPOSITION III:**  **PLAINTIFFS' CLAIMS ARE TIME-BARRED PURSUANT TO THE STATUTE OF LIMITATIONS SET FORTH IN OKLA. STAT. TIT. 12, § 95(11) AND MUST BE DISMISSED.**

Plaintiffs allege that all of the incidents described in their Complaint occurred in the PCPSC in 2005 while they were inmates of the PCPSC.  [*See,* Notice of Removal, and Am. Pet., Ex. 5 thereto, filed in District Court of Pottawatomie County.] Based on Oklahoma law, Plaintiffs' claims are barred by the statute of limitations for claims based upon events which occurred in a prison or jail.  In Oklahoma, a plaintiff has one year from the date an injury is alleged to have occurred within which to file suit based upon facts that occurred while the person was an inmate.  According to Okla. Stat. tit 12, § 95(11),

> All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:
>
> >  a.     the State of Oklahoma,
> >  b.     a contractor of the State of Oklahoma, or
> >  c.     a political subdivision of the State of Oklahoma,
>
> to include, but not be limited to, the revocation of earned credits and claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued[.]

Okla. Stat. tit. 12, § 95(11).

Plaintiff Almon alleges Defendants violated his rights on July 10, 2005, and his cause of action would have accrued on that date. [*See*, Notice of Removal, and Am.

16

Pet., Ex. 5, ¶ 2, p.1, thereto, Dkt. #1.]  Plaintiff Ashley alleges Defendants violated his rights on May 19, 2005.  [*Id.,* ¶ 4, p.2.]  Plaintiff Conover alleges Defendants violated his rights in June, 2005.  [*Id.,* ¶ 8, p.2.]  Plaintiff Foote alleges Defendants violated his rights on July 1, 2005.  [*Id.*, ¶ 3, p.2.]  Plaintiff Laney alleges Defendants violated his rights on June 1, 2005.  [*Id.*, ¶ 4, p.2.]  Plaintiff Martinez alleges Defendants violated his rights on June 1, 2005.  [*Id.*, ¶ 5, p.2.]  Plaintiff Proctor alleges Defendants violated his rights on June 3, 2005.  [*Id.*, ¶ 1, p.1.]  Plaintiff Reinhart alleges Defendants violated his rights on approximately June 24, 2005. [*Id.,* ¶ 9, p.3.]

The latest date on which any alleged cause of action accrued in this case was July 10, 2005, and the latest date any of the Plaintiffs could have filed a lawsuit based on these claims would have been July 10, 2006.  However, Plaintiffs failed to initiate their lawsuit until May 17, 2007, when they filed their Petition in state court. [*See*, Notice of Removal, and Pet., Ex. 8, thereto, Dkt. #1.]  Because Plaintiffs failed to assert any of their claims within one year from the time the cause of action accrued, all of their claims are time-barred and must be dismissed.

## CONCLUSION

The Trust was created pursuant to Oklahoma law on February 4, 2002, for the purpose of promoting, administering, developing, owning, leasing, and financing projects or facilities relating to corrections facilities, jails, or other facilities relating to

17

the administration of justice.  By Oklahoma law, the Trust exists as a legal entity separate and distinct from the Board. The individual Trustees of the Trust are separate and distinct from the Commissioners of the Board.  The affairs of the Trust are separate and independent from the affairs of the Board in all matters or activities authorized by the Trust Indenture, including, but not limited to, the Trust's budget, expenditures, revenues and general operation and management of its facilities or functions.  The Trust is responsible for the management of the PCPSC.  The Trust operates, staffs and maintains the PCPSC.  The Board has no role in making and implementing policy for the Trust, and has no involvement in the day-to-day operation of the PCPSC.  The Board does not have or exercise any control over the PCPSC or the Trust.  The Board was not involved in the incidents alleged in this case.

Plaintiffs have failed to establish that an unconstitutional policy or custom of the Board exists, and have furthermore failed to establish that this policy or custom caused the unconstitutional deprivations alleged.  By Plaintiffs own testimony, they have no knowledge of any policies of the Board which would be applicable to their claims.  Even if Plaintiffs had established that an unconstitutional policy or custom of the Board existed which caused the unconstitutional deprivations alleged, which they have not, Plaintiffs have failed to comply with the applicable statute of limitations for actions filed by an inmate or by a person based upon facts that

occurred while the person was an inmate in the custody of a political subdivision of the State of Oklahoma.  Finally, Plaintiffs cannot maintain a claim for exemplary or punitive damages against the Board.

WHEREFORE, based upon the above and foregoing, Defendant, Board of County Commissioners of the County of Pottawatomie, respectfully requests the Court enter an Order granting its Motion for Summary Judgment as no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

s/ John L. Blodgett
Chris J. Collins, OBA #1800
John L. Blodgett, OBA #18343
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK  73105-1815
Telephone:  405-524-2070
Facsimile:   405-524-2078
E-Mail:       cjc@czwglaw.com
                   john@czwglaw.com

Attorneys for Defendant, Board of County Commissioners of the County of Pottawatomie

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Cregg Webb and Bill Roberson.

s/ John L. Blodgett
John L. Blodgett