# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| STEPHEN PROCTOR, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. CIV-07-654-M |
| | ) |
| BOARD OF COUNTY | ) |
| COMMISSIONERS OF THE COUNTY | ) |
| OF POTTAWATOMIE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is defendant Pottawatomie County Public Safety Center Trust's ("Trust") Motion for Summary Judgment, filed March 2, 2009. On April 22, 2009, plaintiffs filed their response, and on May 4, 2009, the Trust filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

The Trust was created on February 4, 2002, pursuant to the provisions of Title 60 of the Oklahoma Statutes. The Trust was created, in part, for the purposes of promoting, developing, owning, leasing, and financing projects or facilities relating to corrections facilities, jails, or other facilities relating to the administration of justice. The Trust Indenture states that the Trustees shall have the right, power, duty, authority and discretion to exercise exclusive management and control of the properties of the Trust estate and authorizes the Trustees to appoint a Chief Executive Officer and/or Executive Director for the Trust Estate, which, when created, shall undertake responsibilities assigned to them from time to time by the Trustees. Pursuant to a Detention Services Operational Agreement ("Operational Agreement") entered into between the Board of County Commissioners

of the County of Pottawatomie, the Trust, and the County Sheriff, the Trust assumed responsibility for the management of the new detention center effective October 15, 2002.

In October 2002, Rod Bottoms ("Bottoms") was hired by the Trust to serve as Executive Director of the new detention center. The Operational Agreement specified that the Trust Director, who was Bottoms at that time, would be the manager of the new detention center. In December 2003, ground was broken for a new detention facility, and on April 19, 2005, the Pottawatomie County Public Safety Center ("PCPSC") was approved for occupancy by the Oklahoma Jail Inspector. Upon completion of the PCPSC, Bottoms became the Executive Director of the PCPSC, and as Executive Director, Bottoms reported directly to the Trustees of the Trust. The Trust operated, and continues to operate, the PCPSC pursuant to the terms of the Operational Agreement.

Plaintiffs are all former inmates of the PCPSC. Plaintiffs brought the instant action alleging that tortious acts occurred at the PCPSC in violation of their constitutional rights. Specifically, plaintiffs allege that PCPSC detention officers abused the use of restraints, restraint chairs, and tasers. Plaintiffs Stephen Proctor ("Proctor"), Robert Almon ("Almon"), Travis Foote ("Foote"), Matthew Laney ("Laney"), and Tecumseh Martinez ("Martinez") allege that on separate occasions during a time period of June 1, 2005 to July 10, 2005, while inmates of the PCPSC, they were each placed into restraint chairs without benefit of a hearing, medical supervision, routine bathroom breaks, and normal food and utensils in violation of their Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution. Plaintiffs Laney, Martinez, Lloyd Conover ("Conover"), and Kenneth Reinhart ("Reinhart") allege that on separate occasions during a time period of June 1, 2005 to June 24, 2005, while inmates of the PCPSC, they were each chained to their beds in violation of their First, Fourth, Eighth, and Fourteenth Amendment rights under the

United States Constitution. Finally, plaintiffs Bobby Ashley ("Ashley") and Martinez allege that on or about May 19, 2005 and June 1, 2005, respectively, while inmates of the PCPSC, they were tasered in violation of their Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

The Trust has moved for summary judgment alleging that (1) plaintiffs' action is barred by the one year statute of limitations under Okla. Stat. tit. 12, § 95(11); (2) plaintiffs Foote, Proctor, and

3

Ashley's claims are barred because they failed to exhaust their administrative remedies; (3) the Trust cannot be held liable for the alleged constitutional violations committed at the PCPSC; and (4) the Trust cannot be held liable for punitive damages.

A. Statute of limitations

The Trust contends that plaintiffs' claims are time-barred based upon the one-year statute of limitations set forth in Okla. Stat. tit. 12, § 95(11).[1] However, the Tenth Circuit has held that "[i]n Oklahoma, the appropriate statute of limitations period of § 1983 claims is the two-year limitation for an 'action for injury to the rights of another, not arising on contract, and not hereinafter enumerated.'" *Meade v. Grubbs*, 841 F.2d 1512, 1524 (10th Cir. 1988). *See also Allen v. Yates*, No. CIV-08-215-FHS, 2009 WL 811515 (E.D. Okla. March 11, 2009) (finding that two-year statute of limitations period of Okla. Stat. tit. 12, § 95(3) applied to § 1983 action rather than one-year statute of limitations period of Okla. Stat. tit. 12, § 95(11)).

Because it is undisputed that the alleged violations of plaintiffs' rights occurred within two years of the filing of this action, the Court finds that plaintiffs' claims are not time-barred and should not be dismissed.

---

[1] Section 95(11) provides:
> All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:
> a. the State of Oklahoma,
> b. a contractor of the State of Oklahoma, or
> c. a political subdivision of the State of Oklahoma,
> to include, but not be limited to, the revocation of earned credits and claims for injury to the rights of another, shall be commenced within (1) year after the cause of action shall have accrued[.]

Okla. Stat. tit. 12, § 95(11).

B. Exhaustion of administrative remedies

The Trust asserts that Ashley, Foote, and Proctor failed to exhaust their administrative remedies. Because Ashley, Foote, and Proctor were inmates on the date they initiated this lawsuit, the Trust asserts their claims should be dismissed pursuant to 42 U.S.C. § 1997e for failure to exhaust administrative remedies. Ashley, Foote, and Proctor, however, contend there were no administrative remedies available to them as a result of the PCPSC's custom or policy of preventing or thwarting inmates from utilizing administrative remedies.

Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Kikumura v. Osagie*, 461 F.3d 1269, 1281 (10th Cir. 2006) (internal quotations and citation omitted). "Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, . . . ." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Additionally, "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Further, "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Id.* Finally, "[w]here prison officials prevent or thwart a prisoner from utilizing an

5

administrative remedy, they have rendered that remedy 'unavailable' and a court will deem that procedure 'exhausted.'" *Hoover v. West*, 93 Fed. Appx. 177, 181 (10th Cir. 2004).

The PCPSC had the following written grievance procedure:

> <u>GRIEVANCE PROCEDURES</u>: You are to resolve your problems at the lowest level of supervision. Begin first in requesting a grievance form and turn it in to the Pod Officer. If you feel they are unable to remedy your problem, request in writing to speak to the Shift Supervisor. If the Shift Supervisor feels it necessary he/she will send your request grievance to the Facility Commander for further review. The Facility Commander will investigate or review the matter and respond to you in writing within 72 hours of the results of his/her findings.
> If you feel that the matter is still not resolved at this level, you may appeal your grievance to the Executive Director who has final authority. The Executive Director will review the grievance, taking into consideration the previous investigation by the Facility Commander. You will be advised in writing of the Executive Director's decision.

PCPSC Inmate Handbook at 18.

Ashley, Foote, and Proctor assert that the PCPSC had a custom or policy of preventing inmates from utilizing administrative remedies. Ashley, Foote, and Proctor further assert that because of this custom or policy, no administrative remedies were available to them and, thus, the Court should find that they exhausted their administrative remedies for purposes of § 1997e(a). Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Ashley, Foote, and Proctor and viewing all reasonable inferences in their favor, the Court finds no evidence to support Ashley, Foote, and Proctor's assertion that the PCPSC had a custom or policy of preventing inmates from utilizing administrative remedies. Accordingly, Ashley, Foote, and Proctor must show that they each exhausted their administrative remedies.

In his deposition, Ashley testified that he filed a grievance relating to the alleged tasering of him. *See* Deposition of Bobby Ashley at 95-96. Ashley further testified that he did not receive any response to his grievance. *See id.* at 96. The Trust has not submitted any evidence to counter Ashley's testimony. Accordingly, the Court finds that based upon Ashley's testimony, Ashley's administrative remedy was unavailable and, thus, he exhausted his administrative remedies for purposes of § 1997e(a). *See Jernigan*, 304 F.3d at 1032 ("the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable.").

It is undisputed that Foote did not file a grievance in any way relating to the use of the restraint chair or other restraints on him. Accordingly, the Court finds that Foote has failed to exhaust his administrative remedies and his claims, therefore, should be dismissed pursuant to § 1997e(a).

Proctor concedes that he did not file a grievance relating to his allegations regarding the use of a restraint chair on him or his being restrained in his cell. In his response, Proctor, however, contends that he had suffered retribution for having previously filed a grievance and that he did not want to file another one for fear of additional retribution. Having carefully reviewed Proctor's deposition testimony, the Court finds that Proctor's contention is not supported by his actual testimony. While Proctor testified that the loss of his commissary privileges may have been retribution for his filing of a previous grievance against one of the correctional officers, *see* deposition of Steve Proctor at 84-85, Proctor further testified that in relation to the alleged violations at issue in this case, "[t]he stress I was under at the time, I didn't even think to even ask for a grievance." *Id.* at p. 203, ln. 19-20. Based upon this testimony, the Court finds that Proctor had an

available administrative remedy, filing a grievance, and that Proctor failed to exhaust said administrative remedy. The Court, therefore, finds that Proctor's claims should be dismissed pursuant to § 1997e(a).

### C. Section 1983 claims

The Trust contends that plaintiffs have failed to demonstrate that an official policy or established custom of the Trust resulted in the alleged violations of plaintiffs' constitutional rights. Specifically, the Trust asserts that Bottoms was not a "final decision maker" of the Trust and, thus, the Trust cannot be held responsible for any actions of Bottoms. Further, the Trust asserts that even if plaintiffs can establish that Bottoms was a final policymaker, plaintiffs cannot establish that Bottoms' adopted policies and procedures were unconstitutional.

For a governmental entity to be liable under Section 1983, it must have caused the harm through the execution of its own policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Where a city official 'responsible for establishing final policy with respect to the subject matter in question' makes a 'deliberate choice to follow a course of action . . . from among various alternatives,' municipal liability attaches to that decision." *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1211 (10th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Thus, to hold a governmental entity liable under Section 1983, a plaintiff must establish that (1) he has been deprived of a constitutionally protected right, and (2) that a governmental policy or custom was the moving force behind the constitutional deprivation. *Id.*

The Trust was created pursuant to the provisions of Okla. Stat. tit. 60, § 176, et seq. Further, in the Trust Indenture creating the Trust:

> The Trustees may appoint a Chief Executive Officer ("CEO") and/or Executive Director for the Trust Estate, as well as a Management Board which when created, shall undertake responsibilities assigned to them from time to time by the Trustees; . . . . The said CEO/General Manager shall administer the business of the Trust Estate as directed from time to time by the Trustees. The CEO/General Manager may not be a Trustee.

Trust Indenture Creating the Pottawatomie County Public Safety Center Trust at Article VII(4). Additionally, the Operational Agreement provides, in pertinent part: "All management authority for the Pottawatomie County Jail and Juvenile Detention Center will be with the Director." Detention Services Operational Agreement Between the Pottawatomie County Public Safety Center Trust and the Pottawatomie County Sheriff at ¶ 4. Finally, in the deposition of Larry Briggs, the Chairman of the Board of Trustees of the Trust, Mr. Briggs testified that Bottoms, the Executive Director of the PCPSC, "was allowed to set the day-to-day policies regarding discipline." Deposition of Larry Briggs at p. 13, ln. 6-10.

Having carefully reviewed the statutes creating the Trust and the above-referenced documents, the Court finds that Bottoms was responsible for establishing official policy with respect to the use of force and restraints at the PCPSC. Accordingly, the Court finds that Bottoms was a final policymaker in regard to the use of force and restraints at the PCPSC. The Trust, therefore, may be liable for the policies, practices, and customs implemented by Bottoms in relation to the use of force and restraints at the PCPSC.

Additionally, having reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs and viewing all reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have presented sufficient evidence to show that contrary to the written policies regarding the use of force and restraints, Bottoms had established a custom or practice of using

9

excessive force and restraints in an inhumane and unconstitutional manner. Specifically, plaintiffs have submitted evidence that inmates were frequently and regularly placed in the restraint chairs[2] at the discretion of the individual jailer without regard to the restrictions on the use of the chairs and were placed in the restraint chairs as punishment, that the restraint chairs were being used for prolonged periods of time in violation of the manufacturer's specifications, that while in the restraint chairs, inmates were rarely, if ever, given routine bathroom breaks, that Bottoms authorized, directed, acknowledged, and approved in these practices regarding the use of the restraint chairs, that inmates would be chained to their bunks for periods ranging from days to weeks, that some of the chains would not allow inmates to reach their toilet or sink, and that Bottoms implemented, acknowledged, and approved the practice of chaining inmates to their beds, that jailers used tasers regularly and unjustifiably in violation of the PCPSC's written policies, and that Bottoms implemented, acknowledged, and approved this practice. Further, the Court finds that based upon the above-referenced evidence, said practice and custom allowed the use of force and restraints maliciously or sadistically for the very purpose of causing harm and, thus, are unconstitutional.

Accordingly, the Court finds that the Trust is not entitled to summary judgment as to plaintiffs' Section 1983 claims.

D.   Punitive damages claim

In their Complaint, plaintiffs allege a claim for exemplary or punitive damages. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact*

---

[2]In fact, a fax sent from the PCPSC to the Oklahoma Health Department Protective Health Services noted that placement of an inmate in a restraint chair was "standard procedure." October 19, 2005 fax from Deborah L. Friar to the Oklahoma Health Department, Protective Health Services, attached as Exhibit 22 to plaintiffs' response.

*Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, the Court finds that plaintiffs cannot maintain a claim for punitive damages against the Trust. The Court, therefore, finds that the Trust is entitled to summary judgment as to plaintiffs' claim for punitive damages.

IV.    Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Trust's Motion for Summary Judgment [docket no. 30] as follows:

(A)    The Court GRANTS the motion for summary judgment as to plaintiffs' claim for punitive damages and as to Foote and Proctor's claims, and

(B)    The Court DENIES the motion for summary judgment as to the remaining plaintiffs' Section 1983 claims.

**IT IS SO ORDERED this 25th day of February, 2010.**

*(signed)*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

11